Good morning, your honor. I'm Ralph Ellenwood from Tucson. I'm here on behalf of Luis Valencia Amaya. Mr. Amaya is a Mexican citizen who entered this country at age 11 as a legal immigrant and had permanent resident status for about 14 years. He attended schools in the United States. His family is here. He's married to a U.S. citizen and he has two U.S. citizen children. Basically, when all the dust settles in this, the district court granted our motion to dismiss initially. Then, on a motion of reconsideration from the government, changed its mind and denied the motion primarily, in fact only, on the basis that Mr. Valencia Amaya received a form which had a printed notice on the back concerning a fee waiver. And I think it's really important that the court understand the context that this all happened in because it goes really to the heart of the matter. And I'm looking at the transcript of the immigration court proceedings at page 152 of the supplemental excerpts of the record. And there, the judge makes note, starting at line five, now we're giving you the forms there. Ms. Montalvo is just giving you the forms. Now, here's what you have to do. You have to explain on the forms why my decision is wrong as a matter of law. Okay, if you don't do that, then they'll dismiss your case. You can't just simply say, well, I want to stay here. I don't want to be deported and I have kids. That won't get it. And the judge goes on to explain, you have to explain why either my decision or the board's decision is wrong. Now, I just explained to you why legally I have to order you deported and can't consider all those things. So what you're going to have to say is that the board decided that this is an aggravated felony and that you disagree with the board's decision. Do you understand? My client says, yes, sir. Judge, I just told you what the legal issue is. Then the judge says that you don't think it should be an aggravated felony. I mean, that's why you're appealing, all right. Then the judge goes on, and this is, I think, the nut of the thing. Now, there's a fee involved, and you have to have that decision, your appeal, your notice of appeal, mailed to the address on the form. It has to be there, the date I just said, by July the 26th, 1998. And Valencia Maia says, even paying this, you still have to wait that long a period of time, too? Judge, what do you mean? Valencia, you said that there was a possibility of being incarcerated in Florence and still waiting. Judge, oh, yeah. The fee is just for them to consider your appeal, all right. Judge, it's to keep your case going. Whether you win or lose has nothing to do with the fee, Valencia Maia, so they can deny it. Judge, the fee is to pay for the cost of everybody that has to keep track of your case. Any questions? No, sir. That concludes the hearing. So regardless of the form, whether it was given or not given, our contention is that the judge, by this colloquy, at the very end of the hearing, effectively told Valencia Maia, you've got to pay a fee. Now, there's no surprise about this fee, if I can relate back to the hearing on our motion to dismiss before the district court. Our expert testified about fee waivers and the fact that there was such a form. So I think that in the end ---- So is your position, then, that this is so important that the notice of the appellate rights by the immigration judge is invalid unless the immigration judge specifically includes in the colloquy a notification that the fee can be waived? Under these facts, I think so, because the record is ---- Why would it be any different in this case than with any other alien? Doesn't your position have to be like the obligation in a criminal case after the sentence is imposed to notify the defendant that he has a right to appeal, that if the immigration judge fails to include, as he's discussing appellate remedies, a specific oral notification that the fee can be waived in appropriate circumstances, that that is an invalid admonishment of his administrative appellate remedies? I'd certainly like to have the Court rule that way. I understand that. But is that what you're urging upon us? Under the facts of this case, I am. We have an unrepresented prisoner who is before a court by himself, and the contention is that simply handing him a form upon which the reverse, on the reverse of the form in English, is the statement that he can obtain a fee waiver is sufficient. But I thought the Supreme Court told us in United States v. Ruiz that we have to look at more than just the oral colloquy, that you have to consider the documents and all the other evidence that is part and parcel of the hearing. I mean, isn't that why we give it to people in writing, so that they're on actual notice as to what their rights are? That's true, Your Honor. But in this case, there's a dispute as to whether he ever received any of these forms in the first place. And that is the substance. Well, what's your explanation for the fact that the second page was left off when you lodged that form with Judge Jorgensen in support of your motion to dismiss? I tried to get the form that I actually put in evidence from the district court and discovered that for some reason those exhibits have disappeared. I don't know what happened to them. Well, it's because you returned the exhibits to counsel, right? It's your obligation. The clerk doesn't keep them anymore as they used to do when we all started practicing. I believe in this case they were kept by the judge because she took it under advisement and I thought she kept all the exhibits as well. So they didn't return the exhibits to you? No, sir. Okay. May I ask you something, counsel? Yes, sir. Let's suppose that we agree with you that the fee waiver should be included in the colloquy as a matter of structural due process law. Well, not structural. Don't you also have to show that the appellant is entitled to reversal of the removal order and that he would have been eligible for the fee waiver? Well, I think based upon the record that we made at the motion hearing, that he clearly would have been eligible. We obtained testimony from him about his finances, the fact that he was indigent, the fact that he couldn't – that he was a prisoner, that he couldn't afford counsel, that he had no income. Is that in the record now? That's in the record now, Your Honor. Well, I mean, do you think that you have enough proof that he was eligible for fee waiver? And if so, could you cite me to any portion of the record that associates? Well, his testimony at the motion to dismiss hearing is what I'm referring to, and that's contained in the excerpt of record – the supplemental excerpt of record. At page 60, he was the first witness in that hearing. And secondly, does he also show that he would have been entitled to reversal of the removal order on appeal? I didn't understand the question, Your Honor. Well, doesn't he have to show that had he appealed, he would have won? Had he appealed, his appeal was futile because of the position that the Board of Immigration Appeals had taken on the aggravated felony determination for DUIs. And our position is that at that time, the Magallanes decision was in place, and the immigration judge told Valencia Maya, if you appeal, they're just going to dismiss it. Our expert at the hearing, Roger Woof, an immigration lawyer, also testifies that – testified that that would have been the result, that the appeal simply would have been dismissed. I'd like to reserve. Let me – one other question. After the ruling in which the court reconsidered her prior order granting your motion, your client entered a plea of guilty. Is that right? No, Your Honor. We had a bench trial. We waived a jury and did a bench trial on stipulated facts because this was the issue. There wasn't any point in wasting time with a jury trial. Thank you. Thank you, Your Honor. All right. We'll hear from the government. May it please the Court, my name is Bruce Ferg, assistant United States attorney on behalf of the government in this case. Basically, you have two fairly simple questions that have been raised by the appeal. One is whether the district court abused her discretion in granting the motion for as kind of a subsidiary to that, whether it was proper for her in doing that to consider the affidavit that was submitted by this lady Montalvo, which provided the foundation for demonstrating that, in fact, there was considerably more to the documentation that had been provided to the defendant, including two pages of that fee form than had originally appeared. And basically what the district court judge found was, wait a minute, we all thought that we had a one-page form, and that's all that the defendant had received, and all that it says on that form is attach or check, nothing about the waiver. But, in fact, it was a two-page multi-form as distributed, and the first page of that particular form explains at some length that there is the availability of a waiver of the fee, and there is yet another form, which was also included in the packet, that he would submit to the immigration authorities saying, this is why I need to have the fee waived. Now, it's been suggested here, and I think really for the first time, almost a brand new argument, that, oh, you've got to explicitly, orally, as an immigration judge, explain this whole fee waiver possibility. And I would suggest that that's not a claim that was presented below, and really ought not to be considered at this stage. The only thing that was suggested below was that, as a matter of fact, even that whether or not there had been any information about appeals and fees and waivers came out at the hearing itself. It was not in the motion to dismiss. And that's why the trial attorney, who I'm not, I'm just the appellate guy who shows up after the fact, she was kind of caught flat-footed and did not perceive that there was a major shift going on and was not able to respond and immediately detect that there was, in fact, a deficient exhibit that was being presented. So what we have here is, however the defense counsel got that form, when it was presented in evidence, it didn't tell the whole story. And the judge was entitled to make a judgment based on the whole story, i.e., both pages of the form and the rest of the packet, which is replete with discussions about where you send the fee waiver, the contents of it, a particular separate fee waiver request form and so forth. And so it clearly was an appropriate case for reconsideration. In fact, I would have considered it an abuse of discretion not to reconsider when basically the judge would have been making her judgment on a completely flawed basis, that he did not know about the fee waiver possibility. As far as the substance of his motion to dismiss, you simply don't get there. Because there was appropriate information provided to him with regard to the availability of an appeal fee waiver and he chose not to go forward, he is not exhausted. And 1326d.1 makes it very clear. Congress says in order to make these kind of collateral attacks, you must first have exhausted your available remedies. He didn't. He waived it. He went away. And so he's not even allowed to collaterally attack it at this stage. If you have further questions. Kennedy. What about the claim that the information provided by Ms. Montalvo in an affidavit violated the Defendant's Confrontation Clause rights? Well, I think the very way that you framed the question shows what we're talking about. Confrontation under the Sixth Amendment is clearly a trial right. And that's why courts in all kinds of non-trial situations have perpetually used affidavits and hearsay without any kind of problem. It's specifically provided for by Rule 47 of the Federal Rules of Criminal Procedure. And I provided you with a 28J letter, which one of the scholars points out, although that language is no longer explicitly included in Rule 12B, the intent was that that availability still be there. And, of course, we also have Rule 104 of evidence rules, which specifically says that you don't worry about anything besides privilege when you're deciding these kinds of preliminary questions. Her affidavit was primarily foundational. To show, oh, this is what the kinds of forms actually were that were being referred to in the transcript. And so as a preliminary question, it was neither an evidentiary problem nor a Confrontation Clause problem. Any further? All right. Thank you very much, Mr. Burke. I'll give you a minute on rebuttal. Go ahead. Thank you, Your Honor. I realize that I never actually answered the question from the Court about where I got the form. Yeah. I got the form from Roger Woof, and he printed it out from his computer. He's an immigration lawyer. I never had or was even aware. So you didn't realize that it was a multi-page form. I had no idea. He said, here's the form we use, and I labeled it and used it. I had no clue that there was more to it, nor did I ever see a packet of forms. Did you have him ---- how was that particular form presented to the district court? Was it admitted during Mr. ---- is it Woof? During his testimony? Yes. Or was it done with a declaration by Woof? It was admitted. I showed that form to Valencia Maya, who testified first. He said he'd never seen it. And I showed it to Mr. Woof when he testified, and he said this is the form that you ---- that we use to file an appeal. Okay. And that's where the form came from. And just one other thing I'd point out to the Court is that the motion for reconsideration just simply doesn't meet this Court's own requirements, as I put out in the brief. It's ---- it doesn't meet Rule 59. Thank you. Thank you. The case just argued is submitted. All right. We'll take a ---- about a 10-minute recess before we hear argument in the last two cases. All right. The Court is taking recess for 10 minutes. The Court is adjourned.
judges: Tallman, Bybee, Bea